That takes us to the case of Duralev v. United States. Duralev v. United States Good morning, your honors. May it please the court. Eric Kundu on behalf of Plaintiff Appellate Gregory Duralev. I would like to reserve four minutes for rebuttal and I'll try to keep track of my own time. So this case involves a proper application of FTCA principles and case law. I want to jump right in and get to the legal error involving the accrual of the claims that resulted in injury to Mr. Duralev's property. First, there was a little bit of a dispute about what claims are at issue on appeal, so I would like to clarify that. The claims at issue on appeal are Mr. Duralev's constitutional claims as well as the claims that allegedly caused his property damages. So for clarity, I'd like to just go quickly through the list. We note this in our prior brief, but the first cause of action for negligent hiring, training, and supervision. Third cause of action for Fourth Amendment excessive force. Why wouldn't the clock start running on the date of his arrest? I think what's important here is, look, so the FTCA specifically delineates between property claims and injury to personal... But he's alleging false arrest, false imprisonment, and then also for the assault that occurred while he was in detention. Correct, Your Honor. So what additional facts does he need to know before we conclude as a matter of law that those claims have accrued at that point? Correct. I think what's important here is looking at his injury. So his injury, it was personal, and he raised claims to that. The district court found that that was properly accrued at the time of his arrest. But he also brought... So are you challenging that determination? No, I'm not. Well, I think... Because it seems to me you've got a strong argument with regard to the one remaining claim. Negligence. Of negligence, yeah. But the other ones, I'm having a hard time seeing why the court erred in finding that they accrued on the date of the arrest and the assault. Yeah, I think you have to look at it as false arrest with injury of property and false arrest with injury of person. But that's still just false arrest, right? Take a typical state case where somebody is arrested, is held over the weekend, and winds up losing his job because he's been wrongfully detained. That's a property loss, right? It's just additional damages from the same original alleged wrong. I think you have to look at it... There's no direct... There's no allegation of a tort directed at his property. I think it's a... So I think you have to look at it from a question of when the injury to his property occurred. So the district court found that that occurred when he was arrested. But his main claim is that... Go ahead. Sorry. That did not... There's no allegations, but it's very improper that it occurred on the day that he was arrested. And if you think about it too, Mr. Derulov didn't know how long he was going to be detained. And he only found out about his damages to… Would you agree that all of the property damage he has alleged was caused by the wrongful detention? I would say, yeah, it's an issue of causation, but it flows from his false arrest. All flows from that. Yes, correct. And again, I would like to say that the FTCA specifically distinguishes between personal injury to injury to property. And that is why there are different cruel rules under each. And to point you, Your Honors, I guess what's… Why isn't that a consequential damage to the wrongful arrest? I mean even though the lease might have been canceled later, the nexus is the constitutional tort. And the damage is not only injury to his person but also injury to his property. That's why I say I think the strongest claim you have that survives the statute of limitation is the denial of the employment reauthorization. And I'd like to get to that, but I just want to try to answer your question. And again, I want to distinguish. The case law has said that for property claims brought under the FTCA are claims that involve damage to property. But it's not – I guess the problem is it's not a tortious act against the property. It's the fact that he's saying I lost the property because the lease got canceled. I wasn't out to be making money to make the payments, and that is all as a consequence of the wrongful detention. And I understand that, Your Honor. And I understand that the action itself was the arrest. But the case law, so Bartleson, which is a Ninth Circuit case we cite, involved the artillery shell bombing of somebody's land. That happened years before the plaintiff actually found out about the injury to their property. And the court concluded – this court concluded that the claim accrued, even though the action underlying occurred years before, the claim accrued when the plaintiff discovered it. But that was a tort committed against the land, right? It's like the federal government mistakenly sends bulldozers into your property. We get that. But this is – I have trouble seeing why this isn't consequential damages, but it may be helpful if you could move on to your negligence claim. And it would be helpful to me at least if you could give us some idea of this negligent performance of an operational task. That's a pretty abstract concept. I've got a lot of questions about what might be covered by that, but I'd be curious about how you see it. Yeah, no, I understand. And I think it goes to how broad you take those like-circumstances language. And the Supreme Court recently has – said you're supposed to look far afield. So again, it's kind of a sliding scale. There's no precise – I'd say yes, very broadly negligence of performance of operational tasks. I want to go to what the specific – the district court held here, and then I'll kind of illustrate and kind of illuminate, I think, the negligence that we're alleging. So the court concluded that there is no private analog for quasi-adjudicative governmental functions. It cited a district court case, EGLE, and that case relied on two Second Circuit cases from 1987 to 1988. Those cases cited the old law that there can never be analog tort for unique governmental functions. More recently, those cases have been disavowed, and that is known in Olson and Indian towing. So the Supreme Court has said you can't – just because something is governmental function doesn't necessarily mean that it – that there's no private analog. So the district court erred by relying on that kind of legal conclusion that just because it is quasi – So let me be more specific here, okay? With the employment authorization, if I look for analogs, I find things like licensing or permitting decisions by the government. I find – and I'm just going to go through some examples, and my question is going to be whether you think these would be subject to the same kind of conclusion. Export licenses granted or denied for products that might have military applications. FDA drug approvals or denials. Bank supervision decisions. Visa denials. Immigration decisions on asylum or other status. Licensing a nuclear power plant. Granting or denying security clearances. Or denial of disability insurance or food stamp benefits. Would your theory reach negligence in those kinds of decisions? I would say yes. Okay. If that's true, virtually all of those decisions – keep going. If I'm interrupting you, go ahead. No, I don't want to interrupt you. I just wanted to say that those – so you're right. Those are unique government functions. But those also, like the Supreme Court has said, just because it is uniquely government does not necessarily mean that there's not an analog torque. So, for example, here it is about eligibility for employment for a work permit. That theoretically could have been a private company. A government could have hired a private company to make that initial eligibility determination. I understand the government might have the only authority to issue a work permit, but eligibility and other considerations can be privatized. And unique government functions can also be privatized. For example, there's a case we mentioned. Lorenzo talks about federal prisons, which are uniquely governmental, but there's private running of federal prisons. Indiana Towing, the Supreme Court, that case specifically noted that it involved a Coast Guard being negligent for not properly maintaining a lighthouse. At the time, Coast Guards were the only people – or the government was the only one that could run lighthouses. So there are unique things that government can only do, but those also can have a private analog. Running a lighthouse I kind of get. These decision-making, the decision-making by the government is what I'm getting at because that's what we have here. And I gave you that list of examples. There's – in all of those, or nearly all of them, there is some sort of administrative review process. Judicial review is available for most of them. And what you seem to be arguing is that without the courts ever having recognized it before, the Federal Tort Claims Act opens up a whole new vista of collecting damages if the government made a negligent mistake in making those decisions. Is that where your logic leads here? I think that's what the – yeah, I think that's what the Federal Tort Claims Act does. You think so? Yes. And the precedence – it turns out, I guess, that thousands of lawyers around the country whose clients have been hurt by government mistakes and decisions have been missing this great opportunity to recover damages until now. Well, I don't think it – like I said, I don't think it has to be as broad as just operational attachment. I think you have to find some specific equivalent. And again, here I mentioned the eligibility determination. Just as a matter of fact, do you know, was his re-employment authorization denied because of the Interpol red notice on his – based on the commercial fraud? The reason it was denied was because he did not meet the threshold 180 days. So it is a nondiscretionary determination of whether or not you hit 180 days, then you're eligible or not eligible. There's discretion after, but at the time it's solely based on eligibility. And his alleged error is that the person who adjudicated that application miscalculated it because it started at the wrong date. It started at the defensive asylum application instead of the affirmative asylum application. Does – for the tort claim, I assume if you were to prove – if you wanted to prove damages, if this is a viable theory, you'd have to prove the mistake. We'll take that for granted. Would you also have to prove then that he was – he would in fact have been granted the discretionary permission? I think he would have to prove that as – How do you do that? How would he do that? Well, I think he – so this is a motion to dismiss his allegations at the time. The government would probably come back and say – and they did allude into a brief that they would say, oh, we would have denied him authorization anyway. So that would have been what the government would have done below. That gets to my question. They might be able to point to the Interpol red notice and say we wouldn't have granted it because he was going to be extradited to Russia. Yeah, I don't think that that's a reason. I think it would be he would have to be charged with a criminal crime, so maybe his subsequent proceedings would have been a denial. The red notice actually wasn't what he was charged with, but I understand your point. Whatever happened to that? Did it just sort of disappear? He challenged it in that court, and that went up. I'm not sure of the exact status currently. Yeah, I think – But he wasn't extradited to Russia. He is still in removal proceedings. He's cooperating with the government. He did have some conditions recently imposed on him by ISAP. There's been some issues with documentation. Russia has – he's been – I've been told that Russia hasn't issued documents for him to return, which causes an issue. But that's what I've been told currently. I would like to reserve the rest of my time for rebuttal. All right. Thank you, counsel.  Good morning, Your Honors, and may it please the court. Assistant United States Christina Marquez on behalf of the United States. I'm going to start with the negligent employment adjudication since I know the court has more concerns on that particular cause of action. And I do actually want to reach Judge Hamilton's comments about the imposition of liability for that particular type of claim. And I think Judge Hamilton was alluding to basically opening the doors to potential liability for individuals who – I'm sorry, for the government negligently adjudicating certain types of applications. And I think ultimately this court would be very hard-pressed to recognize monetary liability under the FTCA for the adjudication of immigration benefits, given the backlog of millions of applications. It can be hardly rational to conclude that Congress would have contemplated waiving sovereign immunity in that specific scenario. And I think we really do need to focus on the fact that employment authorization documents are coming out of the immigration context, which this court, the Supreme Court, has recognized time and time again that Congress has plenary power over immigration benefits. With that said, there are alternative remedies that Mr. Derulov could have sought in order to reassess the adjudication of that benefit. For example, he could have filed a complaint under the Administrative Procedures Act, which could have ultimately redetermined that adjudication. Also, in the denial of that application, he had remedies. It indicated that he could have challenged that denial via a motion to reopen with USCIS. Do you think the district courts are open to APA challenges to these decisions? Because it would have been a final agency action, he could have brought a claim under the Administrative Procedures Act in order to challenge the denial of this employment authorization document. Do we see those cases? Are they being litigated? They are being litigated in different contexts, for example. When there is a denial of, say, some type of immigration benefit with respect to marriage fraud. Are you talking about employment authorizations in particular? Sure. I'm not specifically certain whether or not the Ninth Circuit has actually addressed that issue with respect to employment authorization documents. I don't see very many appeals from USCIS decisions, which I assume this would be. I'm trying to think of the last time I had one. I've been doing this for 25 years. Yes, Your Honor. I would just point to certain decisions, for example, in the marriage fraud context, when CIS denies a I-130 petition for marriage fraud. That does go through the district court and has gone up to appeal on certain issues. I've seen some of those. But then just kind of taking a step back, I would obviously point to the fact that all of the cases that were cited by Mr. Duralev with respect to the employment authorization document and to establish the private analog requirement, most, if not all, don't actually directly address the issue of the private analog. And so I would point the court to Hilton v. Hallmark Cards. This is a Ninth Circuit decision at 599 F3D894, which says that an assumption is not a holding. So the court has not actually specifically addressed that issue. And then in the certain cases where they may have addressed the private analog issue, it was an entirely distinguishable context. So I do want to refer the court to Algamal, which really does address this issue head on. And in that case, the court denied an I-485 application. And the court found that FTC liability was not permitted because it was a quasi-adjudicative action. And in that particular case, actually, Judge Tallman was on that panel. And I believe he correctly concluded in that particular case that quasi-adjudicative action is not going to be subject to liability under the Federal Towards Claims Act. And then just moving from the remaining claim, the non-time-barred claim that the district court found, I will just briefly touch on the false arrest claims and the time-bar issues. Before you go there, could I ask you, the district judge dropped a footnote involving the discretionary function exception. Do you think the government has discretion in how it calculates that 180-day clock for eligibility for employment authorization? In terms of calculating the 180 days, I don't believe that there is discretion for that. I don't see it either. Yes. But I think the point is that the regulations do contemplate that CIS could have discretion to deny the employment authorization, regardless of whether or not they have met that 180-day timeline. But we don't have any indication here that any discretion was actually authorized or exercised, right? Because they just didn't get to that point?  On this record, it appears it was denied based on the clock issue versus whether or not CIS had denied it because there was an interval. And all we've got is the complaint, basically, at this point, right? That's correct, Your Honor. Okay. Thank you. And so moving to the time-barred claims, I think the court correctly points out that what Duralev is essentially asserting is that there is a separate clock for the type of damages asserted, and there is no case authority that supports this. Also, I think there, in terms of the property damage, and I don't think that this was necessarily addressed in the briefing, but the property, for the false arrest and imprisonment, it ended at the very latest once he appeared before an immigration judge on October 3rd of 2018. And Wallace v. Cato is very clear that for a false arrest claim, damages for that claim cover the time of detention up until issuance of process or arraignment, meaning that he wouldn't have even been entitled to these damages that occurred while he was in detention. So how can a claim accrue based on damages that he wasn't even entitled to? And I think that just sort of goes to the logic behind Duralev's argument. It really just doesn't make sense that you would base claim accrual on damages that he isn't even entitled to. Did the assault occur in 2018 or 2019 in May? It occurred in 2018. 18, so before the October appearance? So it occurred, yes, I guess it would have occurred before the October appearance. Okay. And let me… I thought it was May 5th, 2019. Yes, let me actually double check that. That's what I thought too, I'm confused. You're correct, May 5th of 2019. So the assault and battery claims occurred after. After he was remanded by the immigration judge. But I think in terms of the property damage claims, Duralev has conceded several times in his briefing that those property damage claims, or he's claiming, arise because of his time in detention. I don't necessarily see that he's arguing that they have arisen from his assault and battery claim. No, and that's what I'm saying. But he was arrested earlier in May, February was it? September of 2018 he was arrested. And so in terms of the false arrest claim, the claim would have accrued on that date. And he could have obtained damages between the September arrest date and then his first appearance before the immigration court of October 2018. And so with that, unless the court has any other questions, the United States would respectfully request that we affirm… So if we decide there's no analog to the quasi-adjudicative function, then I guess we don't need to reach the discretionary function exemption? That's correct, Your Honor. Okay. Thank you, Your Honor. Thank you, Counsel Raputo. Counsel, before you begin, on behalf of the court, I would like to thank you for taking this case pro bono. We really appreciate it. You're welcome and thank you for the opportunity. I'll be quick here. So Egnall was the case that the government cited that she said quasi-adjudicative actions can never be the source of an FTCA claim. Again, that relied on the Second Circuit cases that have subsequently been called into question with the Supreme Court's more broader holdings that disavowed the idea that government functions by themselves can no longer. And those are Olson and Indian Towing. I would also like to quickly address the discretionary function argument as regards to the negligence of operational tasks. Again, the statute uses shall consistently. There's no discretionary language. And then alternatively, we had another argument was that once the government does take some discretionary function – so assuming it is discretionary, which it's not – once it does take the discretion, it doesn't have the ability to conduct those operations negligently. And the government did not respond to that. But you agree it's a two-step process for employment authorization, right? There's a non-discretionary determination of calendar eligibility and then some sort of discretionary judgment that somebody has to exercise, right? Correct, yeah. So it's 8 CFR 208.7A1 is the one that directs it. And I would just like to quickly say – she talked about how the assault claim came after. But I will also say if Mr. Durolev's lease – it's not clear by the record – but if his lease did get canceled after July 2019, it would have been within the two-year bar. If there's damage to the property, I'm really having a hard time following your argument because it seems to me the argument is I was in detention. I wasn't able to make the lease payments. When the lease came due, I lost the lease because I wasn't current. And that's not injury to property. That's damage that flows from the alleged wrongful detention. Yeah, I understand. I tried to raise this in the beginning. No, no, you're doing a great job. I second Judge Rollinson's thanks for taking the case. But I just am having a hard time getting over that hurdle. I understand. Okay. Thank you, Your Honor. Thank you, counsel. Thank you to both counsel for your helpful arguments. The case just argued is submitted for decision by the court. The final case on calendar United States v. Claros has been submitted on the briefs. That completes our calendar for the day. We are on recess until 9.30 a.m. tomorrow morning. All rise.
judges: TALLMAN, RAWLINSON, Hamilton